Salvador Carrasquillo, Plaintiff and Appellant, *v.* Gabriel Ripoll, Defendant, and Bernardino Maldonado, Intervener and Appellee.

No. 8062. Argued March 7, 1940.—Decided March 19, 1940.

*Gaspar Gerena Bras* for appellant. *Diego E. Ramos* for appellee.

Mr. Justice De Jesús delivered the opinion of the court.

In satisfaction of a judgment obtained by Salvador Carrasquillo against Gabriel Ripoll, a 31-acre parcel of land belonging to the latter was adjudicated to Carrasquillo. In order to enter into possession of the piece of property Carrasquillo brought unlawful detainer proceedings against Ripoll as tenant at sufferance in the District Court of Arecibo and upon the judgment becoming final on August 10, 1938, there were evicted from the parcel not only defendant Ripoll but Bernardino Maldonado as well who was not a party to the proceedings.

On the 22nd of the same month Maldonado filed a motion for leave to intervene in the unlawful detainer proceedings, and also a sworn complaint. After hearing the parties the court allowed the intervention, over the objection of Carrasquillo, by an order of September 21, 1938.

The amended complaint in intervention, after referring to the unlawful detainer proceedings against Ripoll and to the eviction of the intervener, alleges that, for several years prior to the eviction, the intervener had had the material possession of a five-cuerda parcel, a portion of the property described by him in the complaint, under a share-cropper agreement with Ramón Larracuente, and that certain crops belonging to him, which he describes, were growing thereon; that no notice was served on him nor did he have any knowledge of the unlawful detainer proceedings already referred to brought by Carrasquillo; that the eviction of the intervener took place by surprise, without an opportunity to be heard at court; that said eviction is void inasmuch as no privity has ever existed between him and defendant Ripoll, and, moreover, because the property in question never belonged to Ripoll but that, on the contrary, it belongs and has exclusively belonged for more than twenty consecutive years to Ramón Larracuente and now to his heirs who were no parties to the aforesaid proceedings. The complaint in intervention closes with the prayer that the eviction of the

intervener be set aside; that he be reinstated in his material possession of the aforesaid 5-cuerda parcel; and that the plaintiff in the unlawful detainer proceedings be adjudged to pay to the intervener compensation for the damages suffered by him as the result of his eviction.

The answer denied all the essential averments of the complaint just recited, and, as "New Matter", it was alleged by Carrasquillo that the parcel had belonged to Ripoll; that the intervener was in possession of part of the property claimed by him in behalf of Ripoll and that he had had knowledge of the said proceedings prior to the eviction, "having failed to intervene and allege his rights, if any, to the property in question, and, therefore, that he incurred in laches." The answer closes with the prayer that the complaint in intervention be dismissed, with costs, expenses and attorney's fees on the intervener.

Based on the evidence, the lower court entered judgment whereby it ratified the eviction of the intervener and adjudged Salvador Carrasquillo to pay the sum of $100 as the value of the crop in question, which sum should be deposited by Carrasquillo in the office of the clerk of the lower court within ten days from the date of the order. It was further ordered that the intervener be allowed to remove from the parcel the house where he lived, within ten days from the date of the deposit of the amount above mentioned.

In setting forth the grounds for his order, the judge of the lower court said:

"At the trial of the case the intervener set up a theory distinct from that advanced in his complaint, for he testified to be in possession of the 5-cuerda parcel as the purchaser of two of them and as the lessee of three of them from Larracuente. He also testified in regard to all the crops and in regard to the house on the parcel.

"We are not convinced that Larracuente sold to the intervener any portion of said property, and it would be questionable whether an oral sale of part of an immovable could now be prejudicial to third purchasers with recorded titles executed after judicial sales.

"It appears from the facts as they have been submitted that the plaintiff herein evicted the defendant on the theory that he was a share-cropper living on the property and a dependent of the party sued. However, it does not appear that Ripoll, the defendant in the unlawful detainer proceedings, came to an understanding and continued the relations existing between the intervener and the former owner or possessor of the estate.

"Even conceding that intervener Bernardino Maldonado was rightly evicted, it would be unjust not to reimburse him for the value of his crops and that he should lose his little house built on the plot of ground. It is true that he might have availed himself of his right, under the unlawful detainer act, to have such crops appraised at the time of the eviction; but taking into account that he had not been officially served with copy of the complaint in the unlawful detainer proceedings or of the eviction and that he might not have known of his right for lack of an opportunity to have legal advice, for he had not been previously notified, the court comes to the conclusion that, as evidence had been heard regarding the value of such crops at the hearing of the intervention proceedings a fair appraisal thereof may equitably be made so as to mete out justice in the premises."

Carrasquillo took an apeal to this court and in his brief in support thereof assigns, as committed by the court, the following errors: (1), to allow a complaint in intervention to be filed; (2), to overrule the demurrers of parties intervener and that for insufficiency; (3), to overrule the motion to dismiss, on the ground of variance, filed by the attorney for the plaintiff; and (4), the manner of weighing the evidence and to allow the intervener $100 as the value of his crops.

 The first two assignments have been discussed and found without merit in *Carrasquillo* v. *Ripoll, ante,* p. ___, a case closely connected with the case at bar, and we here ratify what we said there.

 In the complaint in intervention, as we have already noticed, the intervener alleged to be in possession of the 5-cuerda parcel in controversy, by virtue of a share-cropper contract made with Ramón Larracuente who, according to

the intervener, was the owner of the main property. In direct examination the intervener, however, testified as follows:

"Q.—How did you come to live on that parcel?—By order of Ramón Larracuente.

"Q.—By virtue of what?—I came to work, to sow plants.

"Q.—But how?—Two cuerdas bought and three cuerdas leased.

"Q.—So .that you had then, how much land?—Five cuerdas.

"Q.—From the 31.25-cuerdas parcel?—Yes, sir."

The following incident took place during cross-examination:

"Q.—You say that you are in possession of these five cuerdas by virtue of the fact that you bought two and leased three?—Yes, sir.

"Q.—From whom did you buy the two cuerdas?—From Ramón Larracuente.

"Q.—And the other three were leased by you?—By Ramón Larracuente.

"Q.—Were you not in possession of said five acres by virtue of a share-cropper contract, as share-cropper of Larracuente? Is this not a fact?—I own two acres by purchase and I possess three under a lease.

"Q.—Is it not true that you are his share-cropper?—Lessee.

"Q.—Not share-cropper?—Lessee.

"Q.—Attorney for Gerena: I move to dismiss the complaint in intervention on the ground that the complaint is based on the pos- session by this man of the five acres in question by virtue of a share- cropper contract with Ramón Larracuente, and now it appears that he had bought two acres and had leased three.

"Q.—Judge: I want to hear the whole evidence and I will bear in mind his statements in order to pass upon the case, but I am not going to decide it now. The variance between the testimony and the allegation is not sufficient to dismiss the case, unless he would say that he owned nothing, but he says that he leased a parcel and although they are two different things, a share-cropper agreement is not so absolutely different as to constitute such a vairance as to justify the court in entering judgment forthwith.

"To questions from the court he answered:

"Q.—When you made the agreement with Larracuente, which were the words that passed between you and Larracuente?—I offered

to don Ramón Larracuente to buy from him two cuerdas of land and he agreed and I gave to him thirty dollars for two cuerdas of land.

"Q.—Did he sell them to you?—Yes, sir.

"Q.—Did you pay him thirty dollars?—Yes, sir.

"Q.—What else?—I said to him: 'Are you willing to lease me three more cuerdas?', and he answered: 'I lease them to you,' and then he said to me: 'They are leased.'

"Q.—What kind of lease contract was that, what was the consideration?—Five dollars annually.

"Q.—For the lease?—Of the three cuerdas, fifteen dollars.

"Q.—You had bought two cuerdas?—Yes, sir.

"Q.—Did you pay him for them?—Yes, sir.

"Q.—How much did you pay for them?—Thirty dollars.

"Q.—As to the other three cuerdas, for how long did you lease them?—For as long as I could keep the mand pay for them.

"Q.—All that was invested in those three cuerdas until you were evicted and who paid for the seeds and all and for work?—I did.

"Q.—Did Larracuente pay anything?—Nothing.

"Q.—Did you pay Larracuente every year for the lease?—Yes, sir.

"Q.—And after Larracuente died, to whom did you use to make the payments?—To the heirs, to the widow.

"Q.—To whom?—To doña Vita.

"Q.—When was the last time you paid?—This year that has not

"Q.—When was the last time you paid?—This year when the lease was up. The last payment was made three months ago.

"Q.—After Carrasquillo bought this property, did he ever require you to terminate your lease upon the three cuerdas?—That has never belonged to him.

"Q.—Attorney Gerena: We take exception to the last order of the court.

"Q.—Judge: Without prejudice to my considering the question when taking the case under advicement." (T. of E., pp. 9-11.)

Sections 136, 137, and 138 of the Code of Civil Procedure, dealing with "Variance, Mistakes and Amendments," read as follows:

"Section 136.—No variance between the allegation in a pleading and the proof is to be deemed material, unless it has actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. Whenever it appears that the party

has been so misled, the court may order the pleading to be amended, upon such terms as may be just.

"Section 137.—When the variance is not material, as provided in the last section, the court may direct the fact to be found according to the evidence, or may order an immediate amendment, without costs.

"Section 138.—Where, however, the allegation of the claim or defense, to which the proof is directed, is unproved, not in some particular or particulars only, but in its general scope and meaning, it is not to be deemed a case of variance, within the last two sections, but a failure of proof."

The aim of the law is to mete out justice. The rules of procedure, such as those of evidence, are nothing else but the means to that end. Hence, an infringement of one or more of such rules may not produce any legal effect unless operating to the prejudice of the party who requests compliance therewith. Based on this principle and on the modern tendency to disregard the form where instead of facilitating the same hinders justice, the three sections above mentioned require that for a variance between the allegation and the proof to be fatal, the same must be *material,* that is, that "it has actually misled the adverse party *to his prejudice* in maintaining his action or defense upon the merits."

Construing section 136, *supra,* in *Guánica Centrale* v. *Colberg et al.,* 27 P.R.R.. 628, 630, this court expressed itself as follows:

"It is the evident intention of that section that unless there is a very substantial difference between the *allegata* and *probata,* the materiality of a variance must be shown at the trial."

In *Díaz et al.* v. *Rosado et al.,* 30 P.R.R. 476, this court similarly held as follows:

" 'And,' it has been said, 'under such statutes it is not enough for a party to allege merely that he has been misled, *but it must be proved to the satisfaction of the court.* An affidavit should ordinarily be filed showing in what respect the party has been suprised and misled.' 31 Cyc. 703, and cases cited.

"There was no intimation in the court below, nor does the brief for appellant suggest, that plaintiffs herein were in any way taken by surprise or misled to their prejudice." (Italics ours.)

The contention of appellant is that the intervener possessed *through Ripoll*. That of the intervener, according to his complaint, is that he was in possession of the five cuerdas under a share-cropper contract with Ramón Larracuente. His testimony, however, was to the effect that he had bought two cuerdas from Larracuente and had leased three from him. In either case his title, either according to the complaint in intervention or according to his testimony at the trial, derives from Larracuente and, therefore, is adverse to that of Ripoll, thus controverting the contention of appellant. Moreover, the appellant, although he sought to take advantage of the variance, never alleged nor proved that the same was material, that is, that he had been surprised or misled into error to his prejudice. The lower court did not base its decision either on the intervener being owner, lessee or share cropper as regards the five acres, but on being the owner of the house from which he had evicted and of the crop claimed by him, and considered that it was a matter of justice to prevent the appellant from enriching himself at the expense of the intervener by appropriating to himself both things without the proper compensation.

The testimony of the intervener as to the crops sown by him and growing on the parcel at the time of the eviction has not been attacked in any way. Nor has it been shown that he had sown in bad faith and, therefore, the presumption *juris tantum* that he had sown in good faith favors him. The least to which he is entitled, whether as share cropper, lessee or owner, is compensation for the value of his crops of which he was deprived by the appellant in evicting him without having defeated him in court. Assuming that the intervener was merely only a *sower in good faith,* which is the least to be assumed under the facts of the case, the appellant can not complain of the decision of the court as far as the crops are concerned. In this respect, Sánchez Román, in his treatise "Derecho Civil Español," says:

"There are rules of common application to *building, planting and sowing,* viz.: 1, it is presumed that everything incorporated into the ground accrues to the latter as principal, the condition of accessory being applied to that which is incorporated or added; 2, that as nobody should enrich himself to the injury of another, the value of the materials, plants, or seeds and expenses of building, planting or sowing duly shown should be reimbursed to the owner thereof; 3, that compensation is proper also where there has been bad faith on the part of the builder, planter or sower, provided the injury done is proven; and, 4, that bad faith needs special proof, inashmuch as good faith is presumed *juris tantum."* Id. vol. 3, p. 94.

Further on, confining himself to the consideration of the right of the planter or sower on another's land, the aforementioned text writer says:

"The following are general rules *on planting and sowing:*

"1. He who plants or sows in good faith with his own plants or seeds on another's land shall be entitled, before returning such land, to demand that he·be reimbursed for the value of the plants or seeds. discounting the value of any fruits that be might have taken from the land. If the owner is unable to pay for the crops or works, the planter or laborer shall be allowed to remove from the land *that which he put there or tilled.* L. 41, Tit. 28, Part III." (P. 96.)

The intervener failed to appeal from the decision of the court and therefore consents thereto. As in so far as the crops are concerned the pronouncement does not affect the appellant, because, considering the intervener merely as a sower in good faith, he was allowed that to which he was entitled, the decision as regards this particular shall not be disturbed.

■ The decision is indeed erroneous in so far as the appellant is ordered to allow the intervener to remove the house built by him on the property. In accordance with the evidence and with the conclusion reached by the court, the intervener was a *builder in good faith.* This being so, and in conformity with our decisions in *Rivera et al.* v. *Santiago,* and *Rivera et al.* v. *Torres Santiago, ante,* pp. _____, the

owner of the ground acquires the building by accession, but he must first reimburse the builder for the value of the materials and of the work. So that the appellant is entitled to acquire the house by paying the compensation referred to or he must allow the builder to remove the same if the latter, waiving his right to occupy it until the compensation is paid to him, agrees with the owner of the ground to remove the same.

From the foregoing, the decision appealed from must be modified in the sense of acknowledging to the appellant as the owner of the ground his right to take the house by first paying to the intervener the value thereof, that is, $30, as appears from the evidence (T. of R., p. 16), or to allow him to remove the same from the property, and so modified the decision shall be affirmed in all its other pronouncements.